HARRIS *et al. v.* HARRIS.*

(Division A.   April 23, 1928.)

[116  So.  731.   No.  27129.]

*Corpus Juris-Cyc. References: Evidence, 23CJ, p. 156, n. 67; Executions, 23CJ, p. 329, n. 62; p. 506, n. 52; Judgments, 34CJ, p. 588, n. 23; Justices of the Peace, 35CJ, p. 657, n. 43; As to right of court to take judicial notice of agricultural matters, see 15 R. C. L. 1103; 4 R. C. L. Supp. 1037; On priority of lien of judgment on matured crops, see 15 R. C. L. 814.

*J. H. Ford,* for appellant.

*Bratton & Mitchell,* for appellee.

McGowen, J.  Jack Harris obtained a judgment against Bud Isbell in a justice of the peace court, same was duly enrolled in the office of the circuit clerk of Chickasaw county, on the 18th day of September, 1925, execution was issued thereon and delivered to the sheriff of that county, who, on the same day, by his return we ascertain, made a levy on two thousand pounds of cotton in the field as the property of the defendant in execution, and on the 23d day of September the appellant here, T. V. Harris, trustee, executed bond therefor in the sum of three hundred dollars. The property was released to Harris, trustee.

On the 23d day of September, 1925, Isbell executed a trust deed on all his crops of cotton and cotton seed raised in that county on the lands of Mrs. John Isbell or elsewhere (Bud Isbell being a tenant making a crop of cotton on the farm of Mrs. John Isbell for that year).

An issue was made up in the justice of the peace court between the plaintiff in execution and the claimant, T. B. Harris, trustee.  Judgment was entered for claimant, and plaintiff in execution appealed to the circuit court, where the case was tried before the judge of the court, without the intervention of a jury, who rendered a judgment in favor of the plaintiff in execution, Jack Harris, for the amount of the proceeds of the cotton levied on less certain claims allowed by the court to the landlord for rent and supplies.

The court finding that there were five hundred pounds of cotton in the seed, picked, and one thousand five hundred pounds of cotton in the field levied on by the sheriff, unpicked, held that the levy of the execution and the claim of the plaintiff in execution were maintainable to the extent of the *matured crop* levied on by the sheriff. The sheriff and other witnesses testified to the effect that the cotton levied on, standing in the field, was open but unpicked, but that the defendant in execution and the hands were engaged in picking the cotton at the time the

levy was made. Some of the witnesses testified that the stalks were dead and that there were very few leaves on the stalks.

The claimant's testimony tended to show that the cotton had not matured; that the amount of cotton levied on afterwards matured and ripened before it was picked. But the court held that the execution had been levied upon a matured crop and not upon a growing crop, and there is ample evidence to sustain this holding with reference to a cotton crop. Especially is this true when no effort was made to fix an execution lien upon any part of the cotton save that which was open at the time of the levy. The claimant contended that there was not as much as one thousand five hundred pounds open on the date of the levy.

The trustee's claim was based upon a trust deed executed by Bud Isbell to T. V. Harris, trustee, for the benefit of E. I. Harris. A loan of one hundred fifty dollars was made on that date, being the same day that the trustee executed a bond to the sheriff, and upon the execution of the bond the sheriff released the property, and the trustee's right was based upon this trust deed executed subsequent to the levy of the execution by the sheriff. From a judgment against him, the claimant prosecutes an appeal here.

1. It is contended that the judgment of the justice of the peace on which the execution was based was void, because the judgment did not contain the statement that process had been served upon the defendant. It is sufficient to say that the docket entries would show, if it were necessary to refer to them, that the defendant was served with process more than five days before the return day and the date of the entry of the judgment; and there is no merit in the contention that the judgment was void, even if it be conceded that the judgment be subject to a collateral attack.

2. It is contended that the holding of the court was not justified as to the quantity of cotton found by the court to be picked and unpicked. The weight of the evidence supports the finding of the court.

3. It is insisted that none of the cotton levied on, open, unpicked, and standing in the field, was subject to execution, because it was a growing crop. And it is the further contention of the appellant that a crop of cotton is not subject to levy under execution so long as it is on the stalk, ungathered, and there is cotton in the field yet to open and a part of the tenant's crop.

Counsel relies on section 625, Hemingway's Code (section 823, Code of 1906), which is the same as section 761 of the Code of 1892, and also section 3181, Hemingway's Code (section 3970, Code of 1906), which is the same as section 3472, Code of 1892. The former section is as follows:

"*Judgment—Growing Crop Not Subject to Judgment Lien.*—A growing crop shall not be subject to the lien of a judgment."

The latter section is as follows:

"*Growing Crop Not to be Levied Upon.*—An execution shall not be levied upon a growing crop, nor shall the same be seized under an attachment."

The substance of these two sections is found in section 1764, Code of 1880:

"A growing crop shall not be subject to the lien of a judgment, nor shall an execution be levied on a growing crop."

Prior to the Code of 1880, the language "growing crop" does not appear in any of the statutes; but the *status* of the legislation on the subject may be more readily understood by reference to the reports of our decisions.

In the case of *Cayce, Trustee,* v. *Stovall,* 50 Miss. 396, the court held that, by the sixth section of the act of 1867

(Acts Called Sess. 1866-67, p. 571), judgment creditors did not have a lien on the growing crop until matured and gathered, and this was the view until its repeal by the legislature, chapter 8 of the Session Laws of October, 1873 (Called Sess.) p. 29, which repealed these laws in force since 1840. The act of 1840 (Laws 1840, chapter 5, section 9) is in the following language:

"It shall not be lawful for any sheriff or other officer to levy or sell by virtue of an execution, or other process, issuing from any court in this state, any crop of cotton, corn or other agricultural product, while the same is under cultivation *and before it matures and is gathered,*" etc.

In the case of *Cayce, Trustee,* v. *Stovall,* the court held that, as between the trustee in the mortgage and the judgment creditor, no lien attached by virtue of the judgment to the growing crop when his judgment was enrolled, but the lien did attach upon the cotton when matured and gathered, and not before. To the same effect is *Cooper* v. *Turnage,* 52 Miss. 431.

It will be noted that the trust deed in this case was executed five days subsequent to the levy of the execution by the sheriff. It will also be noted that the statute was materially changed by the Code of 1880; the words "matured and gathered" being eliminated from the statute.

Judge CLAYTON, as the organ of the court in the case of *Planters' Bank* v. *Walker,* 3 Smedes & M. 409, referring to the statute of 1840 quoted above, said:

"Before that statute, corn, or other product of the soil raised annually by labor and cultivation, might be seized under execution and sold. . . . The change effected by this law in preventing a seizure of growing crops under execution, operates an exception in their favor, out of the act of 1824. During the time that they are exempted from execution, they are likewise exempted from the operation of the judgment lien. It

is an exception created by law, and is in effect a provision, that, until gathered, a crop is not subject to the lien of either a judgment or execution."

Counsel for appellant argue that the statute now in force, quoted above, means the same as the act of 1840. In this view we cannot concur, for obvious reasons. The act of 1840 and the act of 1867 exempted growing crops from execution and the lien of a judgment until the crops were matured and gathered. In 1880 these words were omitted from the statute. Therefore it cannot be said that "growing crops," without any limitation, means the same thing as "growing crops," matured and gathered. The change in the language wrought a like change in the construction to be given to a statute obviously and apparently purposely changed. A crop that is already grown, matured, or ripened, ready to be gathered, is not a growing crop. When a crop is ready for harvest, as was determined in the instant case, it is no longer a growing crop, but a judgment lien then attaches. But, if this were not true in the instant case, the lien acquired by the levy would attach, since the crop was adjudged to be matured and ready for harvest.

In the case of *Heard* v. *Fairbanks,* 5 Metc. (Mass.), 111, 38 Am. Dec. 394, the court held that "standing corn and potatoes in ground may be attached if ripe for harvest."

In the case of *Shannon* v. *Jones,* 34 N. C. 206, RUFFIN, C. J., speaking for the court there construing a statute which prohibited officers from executing levies on growing crops, held that the prohibition was only as to crops which were not matured, and said, in part:

"It [referring to their statute] enacts, shortly, that it shall not be lawful for any officers to levy an execution on any growing crop. The term 'growing' imports that it is not come to maturity but is green or not made. That would be the construction, if it depended on that word in the enactment; because it is the natural sense of it, and because a statute in restriction of the remedies of

creditors against the property of debtors is not to receive a liberal interpretation."

On the same subject, see American & English Ency. of Law, vol. 8, pp. 308 and 309, section 2, and authorities cited under the notes.

We may add that we take judicial knowledge of the fact, for it is a matter of common knowledge that cotton is a crop raised entirely by planting, cultivating, and harvesting, and is classed as *"fructus industriales."* At the common law this class of crops was subject to levy and sale under execution as soon as it was *in esse;* and the statute here invoked prohibiting the sale of growing crops is in derogation of the common law and therefore must be strictly construed.

The trust deed in this case, executed after the levy by the sheriff by virtue of an execution upon a matured, ungathered crop of cotton, cannot prevail in a contest with the judgment creditor.

*Affirmed.*