**GREENVILLE RIVERBOAT, LLC, Plaintiff,**

v.

**LESS, GETZ & LIPMAN, P.L.L.C., a Tennessee Professional Limited Liability Company; Rainbow Entertainment, Inc., a Mississippi Corporation; Greenville Marine Corporation, a Mississippi Corporation; and Premier Gaming Management, Inc., a Colorado Corporation, Defendants.**

No. CIV. A. 3:00CV52LN.

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 16, 2000.

Barry H. Powell, Jackson, MS, for Plaintiff.

Charles Stephen Stack, Jr., Michael D. Herrin, Richard L. Jones, Jackson, MS, Robert N. Warrington, James T. Milam, Greenville, MS, John G. Corlew, Jimmy Fred Spencer, Jr., Susan Latham Steffey, Jackson, MS, Jerome C. Hafter, Greenville, MS, Neely Caillouet Carlton, Jackson, MS, for Defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motions for leave to intervene of Investor Resource Services, Inc., Richard Langley, Jr., Joe Fox and Gaming Ventures, LLC (collectively the "promissory note intervenors"); Investor Resource Services, Pinson & Associates, P.A., Richard M. Greene, the estate of Bernece Rigirozzi, Barbara J. Archuletta and Rudy Marich (collectively the "shareholder intervenors"); O.T. Marshall, Architects–Engineers and Oscar Thomas Marshall, IV; and Richard L. Macy (Macy), all made pursuant to Rule 24 of the Federal Rules of Civil Procedure, and motions for summary judgment of defendants Greenville Marine Corporation (GMC); Less, Getz & Lippman, P.L.L.C. (LGL); and Rainbow Entertainment, Inc. (Rainbow) and the motion to dismiss the cross-claim of Rainbow or, in the alternative, motion for summary judgment of Premier Gaming Management, Inc. (Premier), all made pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. After a recitation of the facts, the court addresses each motion in turn.

### Facts

Some time prior to 1995, Rainbow, a member of plaintiff Greenville Riverboat, PLLC, entered into a lease agreement with GMC for property in Greenville, Mississippi, which Rainbow was to develop and use as a gaming site/casino. On January 1, 1995, Rainbow defaulted on the lease, failing to pay GMC rental payments in the amount of $250,000. GMC agreed to allow Rainbow to cure its default and assign its rights under the lease to Greenville Riverboat. In turn, Rainbow and GMC entered into an Escrow and Assignment Agreement on January 20, 1995, pursuant to which Rainbow also executed a promissory note to GMC, dated January 1, 1995, in the amount of $250,000—an amount sufficient to cure the default.[1] As collateral for the note and as evidenced by a security agreement executed by Rainbow, GMC received from Rainbow a pledge of Rainbow's right to receive certain payments from Greenville Riverboat— payments provided for in the Greenville Riverboat Limited Liability Company Agreement. GMC perfected its security

---

1. GMC cannot now locate the original copy of the note, but it has provided the court with a copy.

interest by filing financing statements with the Mississippi Secretary of State and the Washington County Chancery Clerk.[2]

Subsequently, Heidelberg & Woodliff, P.A., LGL and Premier became judgment creditors of Rainbow. LGL, which had performed legal services for Rainbow for which it had not been paid, obtained a judgment against Rainbow for $237,192.04 on November 27, 1996, and Premier obtained a $1,100,000 judgment against Rainbow on April 27, 1998.[3]

On January 20, 2000, Greenville Riverboat, anticipating that multiple claims might be made by these parties for money that it owed Rainbow under the Greenville Riverboat Limited Liability Company Agreement, filed its complaint in this cause for declaratory and interpleader relief. Thereafter, on March 24, 2000, Greenville Riverboat deposited with the court the sum of $525,000, representing a distribution owed Rainbow under the Greenville Riverboat LLC Agreement, which deposit was followed on May 2, 2000 by an additional deposit of $975,000 owed by Greenville Riverboat to Rainbow under the LLC Agreement. In June, shortly after these funds were deposited, each of the named claimant defendants separately moved for summary judgment, asserting their entitlement to a share of the money. Subsequently, however, a number of motions to intervene were filed by various persons and entities, each claiming a right to intervene based on an alleged entitlement to some portion of the interpled fund. All of these various motions for summary judgment and to intervene have now been briefed by the parties and are before the court for decision. The court will first address the motions to intervene.

2. GMC correctly filed continuation statements in accordance with the Uniform Commercial Code, allowing its security interest to remain perfected.

3. By agreement of the parties, and pursuant to an agreed order from the court dated May 19, 2000, a $53,185 judgment in favor of

*Motions to Intervene*

Those persons to which the court will refer as the "promissory note intervenors" seek to intervene "in order to protect their security interest in funds which have been interpled by Greenville Riverboat." Another group of proposed intervenors, along with an individual movant, Richard Macy, are shareholders of Rainbow who allege that they have been the victim of securities laws violations, and fraud and misrepresentation by Rainbow and request to intervene so that they may assert a cross-claim against Rainbow for these alleged wrongs. Finally, O.T. Marshall, Architects–Engineers and its owner, Oscar Thomas Marshall, IV, have moved to intervene asserting that they have a claim to a portion of the interpled funds based on a judgment recently recovered against Rainbow in a Tennessee state court which has been enrolled in the Circuit Court of Washington County, Mississippi.

The court has considered the memoranda and submissions of the parties in connection with these several motions and concludes as follows. First, the motions of the shareholder intervenors and Macy are due to be denied.[4] These movants have no judgment against Rainbow and hence have no existing, enforceable claim to the funds in question, or to any funds from Rainbow, for that matter; they profess a right to a potential recovery from the fund based on nothing more than factual allegations of wrongdoing by Rainbow. This is plainly insufficient to warrant their intervention, whether permissively or as of right. Without a judgment, the claims of these proposed intervenors are speculative at best; and since none of them can clearly show that their interests in the subject matter of this action are "direct, substantial [and]

Heidelberg & Woodliff and against Rainbow was entered (presumably for legal services) and Heidelberg & Woodliff, originally made a party, was dismissed from this action.

4. Rainbow, GMC and LGL have responded in opposition to these motions.

legally protectable," as is required by the Fifth Circuit of a party seeking to intervene, *Sierra Club v. Espy,* 18 F.3d 1202, 1207 (5th Cir.1994), their motions to intervene will be denied.

■■■ The court concludes that O.T. Marshall's motion should also be denied. That is because, as GMC notes,[5] while Marshall and his company appear to have a validly enrolled judgment against Rainbow, it does not appear that they have taken the steps required of them by Mississippi law for obtaining money in satisfaction of an enrolled judgment, such as causing a writ of garnishment to issue for sums that Rainbow might be owed by Greenville Riverboat. In this vein, several decisions of the Mississippi Supreme Court "have excepted intangible property, such as ... the right to receive money, from being subject to a judgment lien without garnishment or other appropriate writ." *William Iselin & Co., Inc. v. Delta Auction & Real Estate Co.,* 433 So.2d 911, 915 (Miss.1983). *See Simmons–Belk, Inc. v. May,* 283 So.2d 592 (Miss.1973) (promissory note); *Bank of Monticello v. L.D. Powell Co.,* 159 Miss. 183, 130 So. 292 (1930) (decree allowing solicitor fee in partition cause was not subject to lien of enrolled judgment against the solicitor); *R.F. Walden & Co. v. Yates,* 111 Miss. 631, 71 So. 897 (1916) (voucher for payment of money); *Bryan v. Henderson Supply Co.,* 107 Miss. 255, 65 So. 242 (1914) (choses in action). Furthermore, that court's cases "have also consistently held that money is not subject to an enrolled judgment lien absent a seizure of the money." *William Iselin & Co.,* 433 So.2d at 915. *See McPhillips Constr. Co. v. Carter–Murphy Const. Co.,* 227 So.2d 302 (Miss.1969) (no lien established against overbids in amount of $1,502.70 paid into registry of court where judgment creditors never attempted to garnish or attach the overbids); *Henry v. Alexander,* 131 Miss. 588, 94 So. 846 (Miss.1923) (lien on money begins from seizure and not from date of judgment).

Since it seems that the Marshall judgment has not attached to the proceeds at issue in this litigation, this motion to intervene will be denied.

That brings the court to the motion to intervene filed by certain persons claiming a right to a share of the interpled funds based on a $300,000 promissory note from Rainbow. According to these movants, in exchange for funds and services rendered by them to Rainbow, Rainbow gave them a $300,000 promissory note on February 11, 1995, accompanied by a security agreement of the same date granting them a security interest in all of Rainbow's rights and chattel paper, including the payments which have been interpled in this action. Based on this claimed interest, these movants assert a right to intervene and submit, alternatively, that they should at the very least be granted permissive intervention.

GMC, Rainbow and LGL have each responded in opposition to this motion, asserting various reasons why it should be denied. They contend, for example, that the motion is untimely, having been filed more than two months after the proposed intervenors learned of this action. And they further contend that while the promissory note intervenors may have a security interest, that interest has not been perfected and is thus subordinate to the properly perfected security interest of GMC and to the valid judgment liens of LGL and Premier. Rainbow asserts additionally that the promissory note intervenors have no valid claim to the interpled fund since there has been no breach of the promissory note on which they base their claim. The court has considered the parties' arguments and concludes that the "promissory note intervenors" do have a right to intervene in this action. However, they will be admitted to this action subject to the interests of GMC, LGL and Premier.

---

5. GMC is the only party to oppose this mo-tion.

■ Rainbow's assertion that intervention must be denied these movants since recovery under the note is only proper upon breach of the note is belied by the terms of the note itself, which clearly states that the promissory note intervenors are entitled to recover under the note after payment is made to GMC under its January 9, 1995 promissory note from Rainbow. Thus, once GMC is paid, as the court concludes *infra* shall be done, the February 11, 1995 note to these movants will become due.

■ The question whether they are entitled to any portion of the interpled funds is less clear, but only because Premier's right to enforce its judgment against the funds cannot yet be resolved, as the court concludes *infra*. In this regard, GMC, LGL and Premier assert, and the movants do not dispute, that while movants were granted a security interest in the funds payable from Greenville Riverboat to Rainbow, they never perfected that security interest. Under the law, therefore, their interest is subordinate to the interest of others with a perfected security interest and lien creditors whose liens arose before the claimed security interest was perfected. *See* Miss.Code Ann. § 75–9–301 ("'[A]n unperfected security interest is subordinate to [p]ersons entitled to priority under Section 75–9–312[and][a] person who becomes a lien creditor before the security interest is perfected."); § 79–9–312 ("Conflicting security interests rank according to priority in time of filing or perfection."). The court has determined that GMC, which undeniably has the prior perfected security interest over all other known claimants, is entitled to first priority. And because it is undisputed that LGL has a valid judgment, its claimed interest also has priority over that of the promissory note intervenors. The validity of Premier's judgment is in dispute, however, *see infra* at page 18, and consequently, it cannot be determined at this time whether its judgment is enforceable. If it is ultimately found to be enforceable, then

its judgment will consume what is left of the fund after payment to GMC and LGL. If, on the other hand, its judgment is ultimately found to be invalid, then sufficient funds will remain for payment of the promissory note intervenors' claim. Accordingly, because it does appear that the promissory note intervenors have a legally enforceable interest in the fund, they will be allowed to intervene, though their recovery, if any, is subject to the prior valid claims of those already parties.

The court now turns to the pending motions for summary judgment.

### GMC's Motion for Summary Judgment

By its motion, GMC asserts that of the interpled funds, it is entitled to recover the $250,000 principal amount due under its promissory note from Rainbow, together with accrued interest. In its response in opposition to the motion, Rainbow does not challenge GMC's entitlement to the $250,000 due on the note, but does take issue with GMC's contention that it is due compound interest, rather than simple interest, on that amount. Premier has responded in opposition to the motion on both issues. The court, having considered the memoranda and submissions of the parties, concludes that GMC's motion, as to its entitlement to the principal amount of interpled funds it claims, is well taken and should be granted. The court denies GMC's motion as to the amount of compound interest it claims, but finds, as a matter of law, that GMC is entitled to interest on the principal amount calculated on a simple basis.

In its motion, GMC asserts that based on its perfected security interest in Rainbow's right to receive payments from Greenville Riverboat which gives it priority over Rainbow's judgment creditors, it is entitled to $440,509.26 of the $1,500,000 interpled by Greenville Riverboat, representing $250,000 in principal, along with $190,509.26 in interest, an amount GMC arrived at by compounding the interest due on the note at 11% of the principal per

·year from January 1, 1995 through December 31, 1999, plus a pro rata accumulation from January 1, 2000 through May 31, 2000. The amount of interest claimed by GMC is based on its interpretation of the promissory note in question, which GMC argues allows for the compounding of interest yearly, rather than having it calculated on a simple basis.

■ Premier, the only party to oppose GMC's right to recover under its promissory note from Rainbow, challenges GMC's claim to the interpled funds on essentially two bases. Premier argues first that since GMC has not produced the original promissory note, it has not proved the absence of genuine issues of fact with respect to the existence of a promissory note. This argument is unpersuasive. The evidence of record, and particularly the affidavit of GMC's president, D. John Nichols, establishes that the promissory note between Rainbow and GMC existed and was a valid ·negotiable instrument as defined by Miss. Code Ann. § 75–3–104(a)(1–3).[6] Though GMC does not currently possess the original note, in the court's opinion, the note is still enforceable pursuant to Miss.Code Ann. § 75–3–309.[7]

■ Premier's second argument, that the description of collateral in GMC's security agreement is not sufficient to create an enforceable security interest, is likewise unpersuasive. As Premier correctly points out, to be effective, a security agreement must grant a security interest in collateral, and a valid security agreement must contain a description of the collateral which is sufficient to reasonably identify it.[8] Here, Rainbow granted GMC a security interest in

> the assignment of the right to secure the payments due under that certain agreement existing between Rainbow Entertainment, Inc. and Greenville Riverboat, LLC, a Mississippi Limited Liability Company, as evidenced by that certain Escrow and Assignment Agreement between Rainbow Entertainment, Inc. and Greenville Marine Corporation, the terms and provisions of which are incorporated herein by reference.

6. Miss.Code Ann. § 75–3–309(a)(1–3) states,

> (a) ... "[N]egotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> (2) Is payable on demand or at a definite time; and
> (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or.realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

7. Miss.Code Ann. § 75–3–309 states,

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.
> (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, Section 75–3–308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

Notably, Rainbow does not dispute that it owes GMC $250,000.00 under the note.

8. Miss.Code Ann. §§ 75–9–203, 75–9–110.

This description is sufficient to identify the collateral securing the promissory note between Rainbow and GMC as Rainbow's right to receive payments from Greenville Riverboat; moreover, the escrow agreement referenced in the description states specifically, that "[the promissory note is] secured by the unconditional assignment by Rainbow to Greenville Marine of the first sums due by Greenville Riverboat, LLC, to Rainbow .... " Therefore, GMC's security agreement, including the description of collateral, is valid, and its security interest is enforceable. Furthermore, as GMC's security interest has been properly perfected and continued, GMC has priority over the judgment creditors in this action and is consequently entitled to summary judgment as to its claim to the $250,000 principal due under the promissory note.

Because GMC is entitled to recover the principal amount under the promissory note, it follows that GMC is also entitled to recover interest on that principal amount as provided by the note, and Premier's position that GMC is not entitled to any interest is without merit. The court, however, rejects GMC's assertion that it is due compound interest and accepts, instead, Rainbow's position, that GMC is entitled to interest calculated on a simple basis.

GMC bases its contention that it is entitled to compound interest on the wording of the promissory note, which states, "[Rainbow] hereby promises to pay to Greenville Marine Corporation the sum of $250,000.00, together with eleven percent (11%) interest per annum from date due on demand." In support of its position, GMC cites *Exxon Corp. v. Crosby–Mississippi Resources, Ltd.*, 40 F.3d 1474 (5th Cir.1995), in which the Fifth Circuit awarded compound interest based on contractual language which recited, "[T]he unpaid balance shall bear interest monthly at the rate of twelve percent (12%) per annum ...." GMC asserts that the language in *Exxon* that prompted an award of compound interest is not distinguishable from the language of the Rainbow promissory note and thus provides a basis for this court to award compound interest. Despite GMC's urging, though, the court cannot reasonably determine that the language in the promissory note is sufficiently like that in *Exxon* as to compel the same result.

The general rule is that "when interest is allowable, it is to be computed on a simple rather than compound basis in the absence of express authorization otherwise." *Id.* at 1489; *Stovall v. Illinois Cent. Gulf R.R. Co.*, 722 F.2d 190, 192 (5th Cir.1984). The reason the Fifth Circuit awarded compound interest in *Exxon* was because "the contract provision at question unambiguously and as a matter of law [called] for compound interest." *Id.* at 1489. Apparently, the Fifth Circuit reached this conclusion because of the use of the word "monthly" in the contractual language. The promissory note between Rainbow and GMC clearly contains no such wording and does not expressly authorize compound interest. Additionally, in *Keller v. Citizens Bank*, 399 So.2d 1332, 1337 (Miss.1981), the Mississippi Supreme Court held that a bank's computation of interest "[was] not in accord with that permitted by statute because it was compounded."

Accordingly, the court determines that in addition to the principal amount of $250,000 due under the promissory note, GMC is entitled to recover interest calculated on a simple basis in the amount of $147,944.46, an amount equal to eleven percent of $250,000 ($27,500.00) accruing each year from January 1, 1995 through December 31, 1999, plus a daily pro rata accumulation from January 1, 2000 through May 18, 2000, the date Rainbow offered to sign an order authorizing payment to GMC based on these same calculations. *See Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1165 (5th Cir.1976) ("Once a stakeholder makes an unconditional offer to give up possession of a disputed fund, it ceases to exert that dominion over the

money sufficient to justify an obligation to pay interest thereon, and the rule is that once such an unconditional tender is made, any liability for interest ceases as of the date of tender.").

For the foregoing reasons, the court concludes that GMC's motion should be granted as to its entitlement to the principal amount owed it under the promissory note, and the court finds as a matter of law that GMC is also entitled to interest on that principal amount, calculated on a simple basis, for a total of $397,944.46 to be paid out of the funds interpled with the court.[9]

### LGL's Motion for Summary Judgment

By its motion, LGL contends that it, too, is entitled to a portion of the interpled funds deposited with this court by Greenville Riverboat, based on its monetary judgment against Rainbow, which LGL argues should be satisfied, along with pre-judgment and post-judgment interest, from the interpled funds. LGL's motion asserts specifically that it is entitled to $356,312.38, an amount representing the judgment for $237,192.04 against Rainbow, $25,883.13 in pre-judgment interest accruing from May 7, 1995 through November 27, 1996, $90,166.20 in post-judgment interest accruing from November 28, 1996 through May 11, 2000 and a contempt award of $2,422.33, plus additional interest, which will accrue daily from May 11, 2000 through the date LGL is paid. Rainbow has indicated in its response to the motion that it does not dispute the validity of LGL's judgment and its right to have the judgment satisfied out of the interpled funds, but it disputes LGL's position as to the proper amount of post-judgment inter-

est which LGL should recover.[10] The court, having considered the memoranda and submissions of the parties, concludes that LGL's motion regarding its entitlement to a portion of the interpled funds in satisfaction of its monetary judgment against Rainbow is well taken and should be granted. The court denies LGL's motion as to the amount of post-judgment interest it seeks, but finds, as a matter of law, that it should recover post-judgment interest calculated through May 2, 2000.

 Rainbow argues that LGL's recovery of post-judgment interest should only extend through the date that Greenville Riverboat filed this interpleader action, not through the date that LGL's claim is to be paid, which is what LGL desires. However, Rainbow's argument is only partly correct. LGL should not recover post-judgment interest all the way through until the date its claim is paid, but its recovery should not be limited to the date this interpleader action was filed. Rather, LGL should recover post-judgment interest from November 28, 1996, the day after its judgment against Rainbow was entered, through May 2, 2000, the date Greenville Riverboat interpled funds with this court sufficient to fully satisfy LGL's claim. See Murphy, 534 F.2d at 1165 (recognizing that accrual of interest ceases upon tender).

Accordingly, the court concludes that LGL's motion should be granted and that LGL should recover from the interpled fund the total sum of $355,663.70, an amount representing its $237,192.04 judgment against Rainbow, together with $25,883.13 in pre-judgment interest accruing from May 7, 1995 through November

9. GMC's request that costs be assessed against Premier is denied. Because the court finds that GMC is only entitled to simple interest, Rainbow's motion to strike the supplemental affidavit of D. John Nichols, offered in support of GMC's position, is moot and need not be addressed.

10. GMC has also responded in opposition to the motion on the grounds that as a secured

creditor of Rainbow, which has priority over any judgment creditors, it is entitled to payment first and because "the amount that GMC is entitled to has not yet been determined," no creditor should be paid. Because the court has herein determined the amount to be paid to GMC from the interpled funds, GMC's opposition to LGL's motion need not be considered.

27, 1996; $90,166.20 in post-judgment interest accruing from November 28, 1996 through May 2, 2000; and the contempt award of $2,422.33.[11]

*Premier's Motion to Dismiss the Cross-Claim of Rainbow or, in the Alternative, Motion for Summary Judgment and Rainbow's Motion for Summary Judgment in Response*

■ By its motion, Premier asserts that it has a valid judgment in the amount of $1.1 million dollars against Rainbow, which it is entitled to have satisfied from the funds interpled with this court by Greenville Riverboat and that Rainbow's cross-claim challenging the validity of Premier's judgment should be dismissed. Rainbow has responded to the motion, and provided its own motion for summary judgment, contending that the judgment against it is void due to lack of service of process. The court, having considered the memoranda and submissions of the parties, concludes that the existence of genuine issues of material facts precludes the entry of summary judgment for either party. For this reason, both defendants' motions will be denied.[12]

*Conclusion*

Based on the foregoing, it is ordered as follows:

The motion for leave to intervene filed by Investor Resource Services, Pinson & Associates, P.A., Richard M. Greene, the estate of Bernece Rigirozzi, Barbara J. Archuletta and Rudy Marich in their capacity as shareholders of Rainbow is denied;

The motion of O.T. Marshall, Architects–Engineers and Oscar Thomas Marshall, IV for leave to intervene is denied;

The motion of Richard L. Macy for leave to intervene is denied;

The motion for leave to intervene of filed by Investor Resource Services, Inc., Richard Langley, Jr., Joe Fox and Gaming Ventures, LLC, is granted as set forth herein;

The motion of Greenville Marine Corporation for summary judgment is granted as set forth herein, and as there is no just reason for delay, a separate judgment will be entered for GMC;[13]

The motion of Less, Getz & Lippman for summary judgment is granted as set forth herein, and as there is no just reason for delay, a separate judgment will be entered for LGL;[14]

The motion of Rainbow Entertainment, Inc. for summary judgment and the motion to dismiss the cross-claim of Rainbow or, in the alternative, motion for summary judgment of Premier Gaming Management, Inc., are denied.

---

11. LGL's request that costs be assessed against Rainbow and GMC is denied.

12. Because of the court's decision to deny summary judgment as to both parties, it need not address Premier's motion to strike affidavit and exhibits submitted in reply to cross motion for summary judgment of Rainbow.

13. Said judgment will direct the clerk of this court to pay to GMC the amount of $397,944.46 from the interpled funds and, as requested by the parties, will mandate that upon payment in full from the clerk, all documents filed by GMC in perfecting its security interest are to be withdrawn and all items held in escrow are to be returned to their owners; pursuant to the Escrow and Assignment Agreement between Rainbow and GMC, including the Power of Attorney authorizing GMC to take action with regard to the Microterra and Atlanta Technology Group Stock.

14. Said judgment will direct the clerk of this court to pay LGL the amount of $355,663.70 from the interpled funds.